UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

A.A., by and through her parents and guardians, J.A. and W.A.,

Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD OF ILLINOIS, a division of HEALTH CARE SERVICE CORPORATION ILLINOIS STATE PAC, NFP; THE BOEING COMPANY MASTER WELFARE PLAN; THE BOEING SERVICE CENTER FOR HEALTH AND INSURANCE PLANS; and EMPLOYEE BENEFIT PLANS COMMITTEE,

Defendants.

Case No. 2:13-CV-00357-RSM

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on Motions for Summary Judgment by both Plaintiff and Defendants. Dkt. ## 33, 50. Plaintiff claims that she is entitled to sixteen hours per day of in-home skilled nursing care in lieu of hospitalization under a Boeing Health Care Plan governed by the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101 *et seq*. Defendants move the Court to dismiss Plaintiff's complaint in its entirety or, alternatively, to limit an award of coverage to October 25, 2013, when Plaintiff's conditions and treatment needs were to be reevaluated. Oral argument was not requested by the parties, and the Court finds it unnecessary. Having reviewed the administrative record, the parties' motions, and the remainder of the record,

the Court grants Plaintiff's Motion and denies Defendant's Motion except as to the dismissal of Plaintiff's claim under ERISA § 502(a)(3).

## Introduction

This ERISA lawsuit arises out of the decision of Defendants Blue Cross and Blue Shield of Illinois ("BCBSIL") to deny Plaintiff's claim for in-home skilled nursing care benefits. Plaintiff, A. A., was born in 1997 with cerebral palsy, developmental delays, a seizure disorder, chronic restrictive lung disease, blindness, and other complex medical conditions related to a stroke suffered *in utero*. *See, e.g.*, Administration Record ("AR"), p. 171. Plaintiff requires continuous seizure monitoring and assistance with activities of daily living, as well as periodic suctioning to maintain her airway, administration of scheduled and unscheduled "rescue" anticonvulsant medications and nebulizer treatment, and mechanical administration of oxygen to help with her ability to breathe. She is intolerant to oral feeding and receives her nutrition via gastrostomy and jejunostomy tubes. *See, e.g.*, AR at pp. 146, 171, 186, 313; Dkt. # 15-1, Ex. A-C. Plaintiff's parents received training in substitute home nursing care and were previously able to provide for A.A's care without continuous assistance. However, A.A.'s medical needs have grown more complex with age, and in fall of 2011, A.A.'s parents formally sought coverage for in-home nursing care. *See* AR at p. 426.

### A. Health Care Plan and Relevant Provisions

At issue in this case is the interpretation of the health care plan under which A.A. is covered. A.A. is a beneficiary through the Boeing Company Employee Health Care Plan ("Plan") as a result of her father's employment. *See* Dkt. # 12-1, Ex. A; Dkt. # 13, ¶ 4. The Plan incorporates the Summary Plan Description ("SPD") (AR at p. 1, *et seq*.) and the Boeing Company Master Welfare Document (AR at p. 48, *et seq*.). AR at p. 2. Though the parties dispute whether authority was properly delegated by the Plan Administrator, all agree that

Defendant BCBSIL acts as the Plan's third-party claims administrator and has conducted review and coverage determinations over A.A.'s claims.

Central to this case are two Plan provisions: 1) the "home health care" services provision and 2) the exclusion of custodial and maintenance services. The Plan explicitly provides for "home health care" services for members but only "when inpatient hospital or skilled nursing facility care otherwise would be required" and when the member is "homebound." By the Plan's definition, "homebound" means "that leaving home involves a considerable, taxing effort and that you cannot use public transportation without help." AR at p. 15. Covered home health care services include: "respiratory therapy services," "intermittent skilled nursing services," "home health aide services," and "medical supplies" that would otherwise be provided on an inpatient basis. *Id.* The Plan excludes from home health care service coverage "custodial care," or care "that does not require continuing services by skilled medical or health professionals and primarily assist in the activities of daily life." *Id.* at p. 25. It also excludes "maintenance care," or "care provided by licensed professionals or other medical staff that is not expected to result in significant improvement in the patient's medical condition once the patient's condition has stabilized and plateaued." *Id.* at p. 43.

**B. Application, Review, and Denial of Plaintiff's Benefits Claim**

On September 29, 2011, A.A.'s mother made the first claim under the Plan for in-home skilled nursing services for Plaintiff. This claim resulted in a lawsuit, *A.A. v. Blue Cross blue Shield of IL, et al.*, No. 2:12-cv-00363-TSZ, which was dismissed after the parties reached a confidential settlement agreement. Dkt. # 24-1, Ex. HH. As a result, BCBSIL covered A.A.'s in-home nursing care under the Plan at a rate of 16 hours per day until November 30, 2012. Dkt. # 12-1, Ex. L, p. 100. The Plan requires the claimant's attending physician to periodically review the home health care treatment plan and certify that claimant's condition continues to meet the Plan's benefits criteria. AR at p. 15. In fall of 2012, Defendants began their first review of A.A.'s continued needs for in-home nursing care, including review of Letters of Medical Necessity

(LOMNs) from A.A.'s care providers attesting to the necessity of requested services as well as notes from A.A.'s in-home nurses. *See* AR at pp. 138-161. After an initial denial, appeal, and several extensions of coverage, BCBSIL ultimately denied coverage of A.A.'s request on February 14, 2013. Dkt. # 12-1, Ex. K-M, S. BCBSIL stated as grounds for denial that (1) the care was custodial and/or maintenance and thereby excluded under the Plan, (2) the necessary services do not require continuous oversight from a licensed nurse, and can be provided by a trained caregiver (including A.A.'s parents) or scheduled nurse visits as needed, (3) A.A. is not homebound, and (4) in-patient hospitalization or skilled nursing facility care would not otherwise be required. *Id.* at Ex. K.

On expedited appeal, the initial denial was referred for independent medical review to Dr. Jacob Hen, Jr.. Based on his review of the available clinical information and records, Dr. Hen concluded that A.A. did not qualify for home health care because 1) she would not otherwise require transfer to an inpatient hospital or skilled nursing facility, and 2) she was not "homebound" as she attended school. Dkt. # 12-1, Ex. DD. On February 21, 2013, BCBSIL denied Plaintiff's appeal on slightly altered grounds, including (1) the Plan limits home health care to 120 visits each benefit year, (2) to not provide 16 hours of skilled nursing care would not necessitate transfer to inpatient hospital or skilled nursing facility, (3) A.A. is not homebound as she attends school, and (4) clinical assessment is the only clinical service A.A. requires that must be performed by a covered professional. Dkt. # 12-1, Ex. B. After Plaintiff initiated the present litigation, BCBSIL added two additional grounds for claim denial: (1) skilled care for the purpose of evaluating pulmonary function is needed but only on an intermittent basis, and (2) A.A.'s other conditions are custodial and/or maintenance in nature. Dkt. # 12-1, Ex. C. BCBSIL also concluded that nursing records demonstrate that A.A. has greater respiratory stability than indicated in the LOMNs from her care providers. *Id.*

**C. Procedural History**

Plaintiff filed the instant complaint on February 26, 2013, claiming benefits, enforcement of rights and terms of her medical care Plan, and attorney's fees and costs under ERISA § 502. Dkt. # 1. On May 24, 2013, this Court granted Plaintiff's Motion for Preliminary Injunction, finding that Plaintiff had established that she would likely succeed on the merits of her ERISA claim for benefits. Dkt. # 32. The Court ordered Defendants to continue providing skilled in-home nursing care to A.A. at a rate of 16 hours per day, seven days per week until further order of the Court. *Id.* This matter now returns to the Court upon motions for summary judgment by both parties for resolution of Plaintiff's entitlement to in-home skilled nursing care under the Plan.

**Standard of Review**

Under ERISA § 502(a), a participant or beneficiary may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Aetna health Inc. v. Davila*, 542 U.S. 200, 210 (2004). The Court reviews benefit denial under ERISA de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Court consequently begins with the wording of the plan in determining the applicable standard of review. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). "[F]or a plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator." *Id.* (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999)(en banc)); *see also Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 110-11 (2008). As both parties assume, for the purpose of summary judgment motions, that the abuse of discretion standard applies, the Court proceeds under this standard.[1]

[1] Although A.A. contends that Defendants are not entitled to the "abuse of discretion" standard due to the alleged failure of the Boeing Employee Benefits Committee to delegate discretionary authority to claims administrator BCBSIL, the Court does not reach this dispute. Plaintiff assumes, for the purpose of her motion for summary

**A. Application of Abuse of Discretion Standard**

When a decision to grant or deny ERISA benefits is reviewed for an abuse of discretion, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment…do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999), *rev'd on other grounds*, *Abatie v.* 458 F.3d at 965 (9th Cir. 2006). Under the abuse of discretion standard, the plan administrator's interpretation of the plan "will not be disturbed if reasonable." *Conkright v. Frommert*, 559 U.S. 506, 521 (quoting *Firestone*, 489 U.S. at 115).

In determining how to apply the abuse of discretion standard, the court considers whether plan administration involved a structural conflict of interest. A structural conflict of interest exists where "the same entity that funds an ERISA benefits plan also evaluates claims," creating a situation where "benefits are paid out of the administrator's own pocket, so by denying benefits, the administrator retains money for itself."*Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009). Where a conflict exists, the abuse of discretion standard still applies, but the "conflict must be weighted as a factor in determining whether there was an abuse of discretion." *Abatie*, 458 F.3d at 965. The review of the Court will then be "tempered by skepticism" to a degree depending on the severity of the conflict. *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 707 (9th Cir. 2012). Where no conflict of interest exists, a plan administrator abuses its discretion if it "(1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005); *see also Montour*, 588 F.3d at 629-30. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Boyd*, 410 F.3d at 1178 (internal citations and quotations omitted).

---

judgment, that the "abuse of discretion" standard applies. *See* Dkt. # 33, p. 8.

In the instant matter, Plaintiff contends in opposition to Defendant's motion that late-disclosed emails by Defendants suggest that an actual and structural conflict of interest exists in this case. Specifically, Plaintiff contends that there is sufficient evidence to show that the Boeing Company, the entity that funds A.A.'s coverage, was also involved in the decision to deny her coverage. *See* Dkt. # 55, p. 17. Plaintiff requests additional discovery into the scope of Defendants' possible conflicts of interest only in the event that the Court denies Plaintiff's motion under the more deferential application of the abuse of discretion standard. The Court therefore first considers Plaintiff's claims under the deferential abuse of discretion standard as articulated in *Boyd*. *See Munsen v. Wellmark, Inc.*, 257 F.Supp.2d 1172, 1187 (N.D. Iowa 2003)("The court finds that it need not consider application of this 'less deferential' standard of review until it determines whether or not [plaintiffs'] claim fails under the more typical 'deferential' standard of review."). In doing so, the Court confines its review to the administrative record and only considers evidence that was before the Plan Administrator when it determined to decline A.A.'s claim. *Winz-Byone v. Metro Life. Ins. Co.*, 357 Fed.Appx. 949, 951 (9th Cir. 2009).

**Analysis**

There is no dispute as to Defendants providing a sufficient explanation in rendering their decision to deny A.A.'s claim. Accordingly, the Court considers whether BCBSIL construed the Home Health Care provision of A.A.'s Plan in a way that conflicts with the plain language of the Plan or relied on clearly erroneous findings of fact in reaching its decision. At issue are several findings made by the Plan administrator: (1) that A.A.'s in-home care is not in lieu of inpatient hospitalization or institutionalization; (2) that A.A. is not "homebound"; (3) that A.A.'s care is "custodial," and (4) that A.A.'s care is "maintenance."

**A. In lieu of hospitalization or institutionalization**

The Home Health Care provision of A.A.'s Plan covers home health care visits, including skilled nursing services, "only when inpatient hospital or skilled nursing facility care otherwise

would be required." AR at p. 15. There is no dispute that the Court owes deference to Defendant's construction of the provision "to afford private nursing services only to persons who…would otherwise require an inpatient hospital stay for ongoing care."[2] Dkt. # 34 at p. 16; Dkt. # 35, pp. 9-10. At issue, however, is whether Defendants relied on erroneous findings of fact in reaching their conclusion that Plaintiff would not require hospitalization if in-home nursing care were withdrawn. The Court finds that Defendants did so err, leading them to arbitrary and capriciously conclude that A.A.'s needs did not qualify under the home health care provision.

The Administrative Record in this case clearly demonstrates that Plaintiff would require hospitalization without skilled in-home nursing care. In reaching its conclusion, BCBSIL relied primarily on the findings of its Medical Director, Dr. Vomvouras, and independent reviewer, Dr. Hen. *See* Dkt. # 34 at p. 18. On February 13, 2013, Dr. Vomvouras noted that A.A.'s last ER visit occurred in May, 2012 and that since 2011, she had two inpatient ER admissions and three outpatient ER visits. AR at pp. 140-41. Dr. Vomvouras then misconstrued this evidence to support a finding that A.A. would not otherwise require hospitalization. Directly contradicting Dr. Vomvouras' conclusion, A.A.'s pattern of hospitalizations evidences the necessity of nursing care: both hospitalizations occurred prior to coverage of skilled nursing care, and A.A.'s reliance on inpatient hospitalization declined in concert with her receipt of home health care benefits. Dr. Hen's perfunctory conclusion that A.A. would not otherwise be hospitalized is also premised on critical errors. In his review, which included extensive notes about A.A.'s medical conditions and care needs, Dr. Hen failed to make any notation about Plaintiff's need for suctioning or other respiratory aid. He omitted "suctioning" from a table of services that A.A. requires and noted,

---

[2] Defendants contend that Plaintiff would have the Court impose an alternative construction whereby the Plan covers in-home care to avoid *the risk* of future hospitalization. Dkt. # 34, p. 16. In doing so, Defendants misconstrue Plaintiff's argument. Rather than suggesting an alternative construction, Plaintiff directs her argument toward the clearly erroneous nature of the findings of fact on which Defendant relied in reaching its conclusion that hospitalization would not otherwise be required. *See* Dkt. # 35, pp. 9-10.

when prompted about her possible need for suctioning, that "[t]here are no additional Clinical services provided to the patient not reflected in the table above." AR at p. 323-24. In light of the errors and contradictions within Dr. Vomvouras' and Dr. Hen's own reports, the Court has little trouble concluding that Defendants relied on erroneous findings of fact.

At the same time, the Administrative Record in this case is replete with evidence that A.A. would require hospitalization if nursing services are withdrawn. A.A.'s treating providers uniformly attest to this effect. *See, e.g.*, Declaration of Dr. Thida Ong, AR at p. 440 ("[A.A.'s] condition is not stable without skilled nursing care…If nursing care were removed, [A.A.] may suffer respiratory distress leading to further, more expensive hospitalization, or, in the worst case, further disability or death."). A.A.'s treating physician Dr. Walker reported to BCBSIL that A.A. required seven extended hospitalizations between 2009 and 2011 prior to in-home nursing support, a record indicating that "without appropriate nursing support at home, recurrent hospitalizations can and should be expected for [A.A.]." AR at p. 648.[3] Notes from Plaintiff's nurses also indicate that medical and mechanical interventions were required, periodically and sporadically, during the day and night. *See Id.* at ¶ 5; AR at pp. 498-534; AR at pp. 191-227 (indicating periodic seizure activity and respiratory distress during day and night, requiring trained medical response). The Court does not identify indicia of unreliability that would undermine the many similar findings of A.A.'s physicians, as Defendants suggest. *C.f. Holifield v. Unum Life. Ins. Co. of Am.*, 640 F.Supp.2d 1224, 1242 (C.D. Cal. 2009)(*quoting Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1995 (9th Cir. 2004)). To the contrary, their LOMNs contain detailed, objective descriptions of the patient's medical history and current care needs, which are consistent with A.A.'s nursing reports.

---

[3] As discussed in Part D *infra*, Defendants misconstrue a second-hand statement by Dr. Walker that AA "is stable and not at risk for a catastrophic event." Dkt. # 47, p. 20; AR at p. 147. Aside from the hearsay nature of this evidence, it is clear that Dr. Walker's opinion to this effect was predicated on the assumption that A.A. continue to receive 16 hours of continuous in-home skilled nursing care. *See* AR at p. 145.

Defendants' conclusion that inpatient hospitalization would not otherwise be required is patently unreasonable in light of Plaintiff's pattern of both around-the-clock and spontaneous needs for skilled medical care and her history of hospitalization prior to in-home care. Judge Lasnik rejected an insurer's similar attempt to rely on the lapse in time since hospitalization in *K.F. ex. rel. Fry v. Regence Blueshield*, 2008 WL 5330901, *2 (W.D. Wash. 2008). As in the instant case, "[t]he only reason [plaintiff] has stayed out of the hospital…is because her parents have stepped forward to provide or obtain medical services for her when [the insurer] declined to do so. [The insurer's] analysis would force parents to stand by and watch as their child's health deteriorates to the point where acute medical intervention becomes necessary just so they could prove that her condition is serious enough to require hospitalization." *Id.* The Court similarly finds that BCBSIL abused their discretion in concluding that A.A.'s condition is not serious enough to require inpatient care in lieu of in-home nursing. *See Id.* at *2 n. 2 ("Even under an abuse of discretion standard, the Court would conclude that [the insurer's] coverage determination was unreasonable.").

The Court also disagrees with Defendants' argument that even if A.A. is eligible for in-home skilled nursing care, "there is no evidence in the record suggesting that 16 hours of continuous care is medically necessary." Dkt. # 34, p. 18. As an initial matter, the Court notes that there is no dispute that 16 hours of in-home skilled nursing care is an authorized benefit under the Plan and one that has been previously accorded to Plaintiff. As to the necessity of continuous rather than intermittent care, Defendants concede that A.A.'s respiratory needs can occur on a scheduled or unscheduled basis. *See* Dkt. # 35, p. 10; AR at pp. 141-142 (discussing scheduled medical care supplemented by "nebulizers, chest PT twice daily [] with additional as needed nebulizers, CPT and cough assist as needed" and remarking that "additional suctioning or nebulizer use [was] documented"). A.A.'s treating physicians are in complete agreement that she requires at least 16 hours of continuous skilled nursing care, a regime which has previously proven effective in reducing her need for inpatient hospitalization. *See, e.g.,* AR at pp. 439-441,

146, 166, 171 ("Our medical team is recommending 16 hrs per day of skilled hourly nursing care for Anna at home. Her medical condition is totally dependent on the skill and vigilance of her caregivers in order to prevent recurrent hospitalization."); Dkt. # 14-1, Ex. B, p. 1; Dkt. # 12-1, Ex. G; Dkt. # 24; Ex. NN. BCBSIL's attempt to restrict A.A.'s care to an intermittent basis is clearly unreasonable in light of her simultaneously continuous and unpredictable medical needs. *See K.F.*, 2008 WL 4330901, at *5 (determining that "twenty-four hours of skilled nursing care is necessary" in light of plaintiff's round-the-clock mechanical and medical needs); *Fritcher v. Health Care Service Corp.*, 301 F.3d 811, 818 (7th Cir. 2002)(determining that insurer's decision to limit skilled nursing coverage to a 2-hour scheduled visit was "patently unreasonable."). Even under the most highly deferential standard, the Court finds that BCBSIL clearly abused its discretion in determining that hospitalization would not result upon the withdrawal of A.A.'s current regime of sixteen hour skilled nursing care.

**B. Homebound**

Defendants contend that Plaintiff does not qualify for home health care services because she is not "homebound" as required under the Plan. Defendants base this conclusion on the fact that "A.A. attends school full-time with the assistance of an aide, who has allegedly been trained to perform suctioning and other interventions, but is not herself a nurse." Dkt. # 34, p. 12. Plaintiff assert that Defendants' interpretation of the "homebound" provision is inconsistent with the plain language of the Plan. Dkt. # 35, p. 9. The Court agrees.

The Plan restricts the provision of home health care services to members who are "homebound." AR at p. 15. The Plan defines "homebound" to mean "that leaving home involves a considerable, taxing effort and that you cannot use public transportation without help." *Id.* The plain language of the plan conditions "homebound" on two criteria: 1) whether leaving the home involves "considerable" and "taxing" effort, and 2) whether the member requires assistance to use public transportation. Defendants fail to offer any evidence to demonstrate that A.A. does not meet these criteria, relying instead entirely on the fact of her school attendance.

Defendants' interpretation of "homebound" is clearly inconsistent with the Plan language. By Defendants interpretation, any member who is capable of being present outside of the home (i.e. at school) would not be considered homebound. In other words, Defendants improperly focus on the fact of the member's presence outside of the home and not the manner in which she left the home (i.e. with considerable, taxing effort and with necessary help in using public transport), which is what the Plan explicitly deems relevant to its definition of "homebound." Defendants' interpretation is patently unreasonable, as it would lead to the absurd result that no one could be considered homebound as there is no one who could not be, in some manner, removed from the home. As one court pointed out with respect to an insurance company's similar interpretation of a "homebound provision," such an interpretation "does not even include dead people, who although patently unable to leave the home via their own efforts, can leave home with the assistance of equipment and other people." *Munsen v. Wellmark, Inc.*, 257 F.Supp. 1172, 1191-92 (N.D. Iowa 2003). Defendants cannot rely on an interpretation that is both illogical and would render meaningless the clear and explicit criteria that the Plan employs.

There is ample evidence in the Administrative Record that A.A. meets the Plan's definition of "homebound." Plaintiff's treating physicians all attest, and Dr. Hen confirmed upon medical review, that Plaintiff is both bed-bound and wheelchair-bound. *See, e.g.*, Dkt. # 12-1, Ex. DD; AR at pp. 4, 10 ("[A.A.] has no ability to reposition herself and is at significant risk for decubitis."). A.A.'s attendance at school is conditioned on assistance with transport by a skilled aide, who provides suctioning and nursing interventions during transport and at school under the direct supervision of a nurse. AR at p. 653. In light of substantial and uncontradicted evidence demonstrating that Plaintiff cannot leave her home or ride public transport without considerable, taxing effort and assistance, Defendants abused their discretion in determining that she does not meet the Plan's definition of "homebound."

**C. Custodial Care**

Defendants claim that even if Plaintiff meets her initial burden of establishing an affirmative entitlement to home health care, such care is still excluded because it is "custodial" in nature. Defendants argue primarily that: 1) suctioning is not a skilled nursing task under Washington law, and 2) suctioning is not the primary task performed by A.A.'s caregivers. *See* Dkt. # 34, pp. 20-21. The Court again agrees with Plaintiff that Defendants have abused their discretion in relying on an interpretation of the Plan at odds with its plain language.

A.A.'s Plan states that it does not cover "custodial" care under its home health care provision. AR at p. 25. It defines "custodial" as that care which is "designed primarily to assist in the activities of daily living and is not primarily provided for its therapeutic value in treating an illness or injury." AR at p. 42. It expressly excludes care "that does not require continuing services by skilled medical or health professionals." AR at p. 25. The Plan provides a non-exhaustive list of care that qualifies as custodial, including assistance in "walking, getting into and out of bed, toileting, bathing, dressing, feeding, preparing special diets, and supervising medications that ordinarily are self-administered." *Id.*

First, it is clear that A.A.'s care requires services of skilled medical or health professionals. Defendants contend that there is no requirement under Washington law that suctioning be performed only be a skilled nurse. Yet Washington law bars the delegation of specified skilled nursing services, including administration of medications and acts that require nursing judgment. RCW 18.79.260(3); WAC 246-840-910. It is undisputed that Plaintiff requires the daily administration of an intricate regime of planned and as-needed medications. *See, e.g.*, AR 187-88 (Nursing Plan of Care laying out routine and as-needed medications, including for spontaneous seizure activity and respiratory distress). Plaintiff seeks continuous in-home nursing care precisely because her complex medical needs, such as for planned and unplanned suctioning and as-needed administration of rescue medication, necessitate acts that require nursing judgment. Moreover, Washington has clearly indicated its intent to classify suctioning as a skilled nursing service by explicitly doing so in the Medicaid context. *See* WAC 182-551-

3000(1)(d)(classifying "suctioning" as a skilled nursing service that cannot be met within the scope of intermittent home health services and which qualifies clients seventeen years of age and younger for continuous in-home nursing care).

More generally, Defendants' interpretation of "custodial" care is unreasonable in its over-breadth, as it would turn skilled care with an assisted living component into care that is custodial in nature. Defendants contend that because Plaintiff only receives *intermittent* suctioning accompanied by other forms of assistance, her 16-hour per day nursing care regime must be primarily intended to assist in the activities of daily living. Their definition again elides the plain language of the Plan, which excludes care that is "*designed primarily* to assist" in daily living activities. AR at p. 25 (emphasis added). The Plan explicitly embraces skilled care with an unskilled component as non-custodial.

Here, Plaintiff's care is designed primarily to meet her complex medical needs that cannot be provided by an unskilled provider, including for sunctioning and medical interventions such as rescue therapy when unpredictable seizure activity ensues. *See, e.g.*, Dkt. # 15, Ex. A, p. 2 ("[A.A] requires suctioning…, medication administration and medical assessment to determine when to use 'rescue' therapy. These interventions are medically necessary, needed by [A.A.] and…are clearly medical interventions."); Dkt. # 12-1, Ex. G ("[A.A.]'s specialized needs are out of the scope of practice of an unskilled personal care provider."). A.A.'s Nursing Plan of Care with New Care Concepts is clearly designed to address necessary medical interventions, such as suctioning and administration of as-needed medication for seizures, respiratory distress, and other spontaneously arising agitation. *See* AR at pp. 186-190. The fact that nurses perform unskilled tasks "in and around their more technical skilled duties" does not transform their skilled care into custodial care. *Watts v. Organogensis, Inc.*, 30 F.Supp. 2d 101, 109 (D. Mass. 1998).

**D. Maintenance Care**

Like "custodial care," Plaintiff's Plan also excludes "maintenance care" from coverage. AR at p. 25. The Plan defines "maintenance care" as "[c]are provided by licensed professionals or other medical staff that is not expected to result in significant improvement in the patient's medical condition once the patient's condition has stabilized and plateaued." AR at p. 43. Defendants argue that BCBSIL properly excluded Plaintiff's care as "maintenance" because her condition is "stable." Dkt. # 34, p. 23. The Court disagrees.

First, the Court finds that Defendants rely on erroneous findings of fact in determining that Plaintiff's health condition has stabilized. Defendants rely largely on a post-litigation denial letter as evidence that A.A.'s nursing notes "do not document any repeated episodes of respiratory failure." AR at p. 855; Dkt. # 12-1, Ex. C. However, this conclusory finding is contradicted by the nursing notes themselves, which, as discussed *supra*, evidence unplanned rescue interventions by A.A.'s nurses to avert respiratory failure and control seizure activity. Where a patient consistently requires planned and unplanned medical intervention to survive, her health condition is clearly unstable.

Defendants also misconstrue statements by A.A.'s treatment providers to classify her health condition as stable. Again, Defendants rely on a statement by BCBSIL Medical Director Dr. Vomvouras about her phone call with Dr. Walker, in which he reportedly "concluded that the member is stable and not at risk for a catastrophic event… ." AR at p. 147. Yet Dr. Walker's conclusion to this effect was clearly predicated on the assumption that A.A. continue to receive 16 hours of continuous skilled nursing care. *See* AR at p. 146 (statement by Dr. Walker in support of Plaintiff's request to continue in home nursing care at 16 hours per day). He and A.A.'s other treatment providers have uniformly affirmed that A.A.'s condition would greatly decline without nursing services.

The Court further finds that Defendants used statements by Plaintiff's treatment providers in service of an interpretation of the "maintenance" care provision that is at odds with the Plan language. Defendants rely on indications of the patient's relative stability achieved through in-

home nursing care to classify her care as "maintenance." In doing so, they commit the same fallacy as when previously arguing that A.A. does not qualify for home health care because she is not presently hospitalized.[4] With respect to both provisions, the patient is only stable and therefore avoiding hospitalization because she has been receiving 16 hours of in-home nursing care. If this care were withdrawn, her stability would diminish, necessitating medical intervention. It is only because of the benefits of nursing care that A.A. has been able to maintain sufficient stability to avoid hospitalization, which is precisely what the Plan contemplates.

**E. Availability of Injunctive Relief**

It is undisputed that the Court is invested with the authority to determine A.A.'s eligibility for future medical benefits under the Plan. 29 U.S.C. § 1132(a)(1)(B); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987)(explaining that relief under §502(a) may include "a declaratory judgment on entitlement to benefits [] or an injunction against a plan administrator's improper refusal to pay benefits"). Nonetheless, Defendants contend that injunctive relief is inappropriate for two reasons: (1) remand is the proper course where an administrator misconstrues a plan's terms, and (2) permanent injunction would be contrary to the right to periodic evaluation provided by the Plan. The Court finds both arguments by Defendants unavailing and orders sixteen hours of in-home nursing care reinstated for Plaintiff until BCBSIL properly reaches the unlikely determination that A.A.'s medical condition no longer necessitates this benefit.

In the ordinary instance where an insurer denies a member's claim because of a failure to properly apply plan provisions, the appropriate remedy is for the Court to remand the case to the administrator to re-determine in light of the corrected interpretation. *See, e.g.*, *Pannebecker v. Liberty Life Ins. Co. of* Boston, 542 F.3d 1213, 1221 (9th Cir. 2008); *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income* Plan, 85 F.3d 455, 460-61 (9th Cir.

[4] *See* Dkt. # 32, p. 4 (determining that an interpretation by Defendants that rests on the fact that she does not *presently* need hospitalization is likely unreasonable).

1996)(ordering remand where an ERISA administrator "misconstrued the Plan and applied a wrong standard to a benefits determination"). This matter, however, is not such an ordinary case. In instances such as the present, where an ERISA administrator has granted and then wrongfully terminated a benefit "as a result of arbitrary and capricious conduct, the claimant should continue receiving benefits until the administrator properly applies the plan's provisions." *Pannebecker*, 542 F.3d at 1221 (citing *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001)). *See also Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623 (9th Cir. 2009)(remanding to the district court to order reinstatement of long-term disability benefits because claimant would have continued receiving them absent the ERISA administrator's arbitrary and capricious conduct); *Taylor v. Reliance Standard Life Ins. Co.*, 2012 WL 113558, *3 (rejecting, under *Pannebecker*, insurer's request for remand).

Defendants mistakenly rely on *Conkright v. Frommert*, 559 U.S. 506 (2010), for the proposition that the Court must limit relief to remand. In *Conkright*, the Court rejected a "'one-strike-and-you're-out' approach" to ERISA actions taken by a district court that declined to accord deference to a plan administrator's decision based on the administrator's prior "single honest mistake in plan interpretation." *Conkright*, 559 U.S. at 509. An administrator had interpreted the plan at issue to require a contested approach, referred to as the "phantom account method," for calculating distributions of retirement payments for covered employees. On judicial review, the district court applied a deferential standard of review and upheld the administrator's interpretation. The Second Circuit subsequently vacated and remanded the decision, holding in part that the administrator's interpretation was unreasonable. Upon remand, the administrator offered a new approach, which the district court rejected, finding that it did not owe deference to the administrator's interpretation. It was this decision not to extend deference that was the subject of the Supreme Court's holding.

Defendants fail in their attempt to shoehorn the instant case into *Conkright's* holding. First, *Conkright* did not consider an instance in which an administrator had previously

determined to extend benefits to a claimant and then had arbitrarily and capriciously withdrawn them. Nor did *Conkright* consider a situation analogous to the present in which the Plan Administrator relied on multiple erroneous findings of fact in addition to misconstruing Plan provisions. And most critically, *Conkright*'s holding was expressly limited to instances in which an administrator commits a "single honest mistake" in plan interpretation. The *Conkright* Court, in fact, distinguished cases such as the present where an ERISA administrator manifests a consistent pattern of egregious denials, "thereby undermining the prompt resolution of benefits" and producing needless litigation. 599 U.S. at 521. The Court explained that "[m]ultiple erroneous interpretations of the same plan provision even if issued in good faith, might well support a finding that the plan administrator is too incompetent to exercise his discretion fairly." *Id.* In the instant case, Defendants' pattern of repeated denials in reliance on successive erroneous interpretations of the Plan and erroneous findings of fact and resulting in two lawsuits manifests just such a pattern. *See Lafferty v. Providence Health Plan*, 720 F.Supp.2d 1239, 1241 (D. Or. 2010).

Finally, the Court disagrees with Defendants that it is precluded from issuing any relief for the period after October 25, 2013. Dkt. # 59, p. 2. Neither party disputes that, under the terms of the Plan, BCBSIL is entitled to reevaluate A.A.'s medical condition in the future and make eligibility determinations on the basis of then-existing facts. *See* AR at p. 15. At the same time, the Court is clearly empowered under ERISA § 502(a) to clarify future medical benefits under the Plan. Accordingly, the Court clarifies that Defendants are to continue providing Plaintiff with sixteen hours of in-home nursing care per day.[5] Defendants may only withdraw such benefits in the future if the Plan Administrator determines that A.A.'s medical condition no longer necessitates these benefits. When reevaluating A.A.'s benefits in the future, BCBSIL must make any determination in a manner that is entirely consistent with this Order. In so doing,

---

[5] As this Order with its attendant clarifications is issued after October 25, 2013, a reevaluation of A.A.'s condition at that point, if indeed such reevaluation did occur, does not affect the Court's instant award of benefits.

BCBSIL must refrain from relying on erroneous interpretations of Plan provisions and findings of fact as specified herein. In ordering this relief, the Court does not herein abrogate the Administrator's ability to exercise its discretion in making future determinations under the Plan or declare "an immutable right to coverage." *K.F.*, 2008 WL 5330901, at *5 n. 5. It simply affirms that absent the unlikely future determination that A.A. no longer qualifies for such benefits, BCBSIL may not terminate her current regime of 16 hours per day of in-home skilled nursing care.

**F. ERISA Section 502(a)(3) Claim**

Defendants move the Court to dismiss Plaintiff's claim for payment of benefits under ERISA § 502(a)(3). Described as a "catchall" provision, Section 502(a)(3) offers "appropriate equitable relief for injuries caused by violations that Section 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1995). Dismissal of a Section 502(a)(3) claim is appropriate at the summary judgment stage where a plaintiff has asserted, and obtained relief for, a claim under Section 502(a)(1)(B). *See Ford v. MCI Comms. Corp. Health & Welfare Plan*, 399 F.3d 1076, 1083 (9th Cir. 2005), *rev'd on other grounds*, *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011). Plaintiff agrees to the dismissal of her Section 502(a)(3) claim should the Court grant her Motion for Summary Judgment. The Court consequently finds that dismissal of Plaintiff's Section 502(a)(3) claim is appropriate at this stage.

**G. FRCP 56(d) Discovery**

Plaintiff requests in opposition to Defendants' Motion for Summary Judgment that the Court permit discovery under Federal Rule of Civil Procedure 56(d) into possible conflicts of interest among Defendants should the Court deny Plaintiff's Motion. Dkt. # 55. As the Court hereby grants Plaintiff's Motion for Summary Judgment, Plaintiff's request for discovery is accordingly denied.

## Conclusion

For the reasons stated herein, the Court hereby ORDERS that Plaintiff's Motion for Summary Judgment (Dkt. # 33) is GRANTED and Defendants' Motion for Summary Judgment (Dkt. # 50) is GRANTED in part and DENIED in part. Defendants' Motion is granted as to the dismissal of Plaintiff's claim under ERISA § 502(a)(3). Defendants' Motion is denied in all other respects.

Defendants shall continue providing Plaintiff with sixteen hours of in-home skilled nursing care. In the future, Defendants may only withdraw such care upon a finding by the Plan Administrator, reached in a manner consistent with this Order, that Plaintiff's medical condition no longer necessitates these covered benefits.

Dated this 7th day of March 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE